IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| DARYL P. HOLMAN, an individual,<br><br>  Plaintiff,<br><br><br>   vs.<br><br><br>NEW YORK LIFE INSURANCE COMPANY, a Delaware corporation, NYLINK INSURANCE AGENCY INCORPORATED, a Delaware corporation, and DOES I-X,<br><br>  Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:10-CV-490 TS |

## I. INTRODUCTION

This matter is before the Court on: Plaintiff, Interpleader Defendant, and Counterclaim Defendant Daryl Holman's ("Daryl Holman" or "Plaintiff") 1) Motion for Entry of Judgment,[1] 2) Motion for Extension of Time to Complete Fact Discovery and to File an Opposition to NYL's Motion for Summary Judgment,[2] and 3) Motion for Summary Judgment Against New York Life Insurance Company and Nylink Insurance Agency Incorporated (collectively "Defendants" or "NYL").[3] Also before the Court are: Defendants' 4) Motion to Reconsider New

---

[1] Docket No. 55.

[2] Docket No. 62.

[3] Docket No. 106.

1

York Life's Motion to Deposit Funds for Interpleader,[4] 5) Motion for Summary Judgment,[5] 6) Motion for a Protective Order, and 7) Motion to Strike as Untimely Exhibits Q and R Attached to Plaintiff's Reply Memorandum In Support of Motion for Summary Judgment.[6]  Having reviewed the parties respective arguments, the Court will rule on the Motions as set forth below.

## II. FACTUAL BACKGROUND

Taylor Holman married Stacy Holman on February 25, 2006.  Shortly thereafter, Taylor and Stacy Holman acquired several life insurance policies from NYL, including a whole life insurance policy issued on June 20, 2006, Policy No. 48 352 476, on the life of Taylor Holman (the "Policy").  At the time the Policy was issued, Stacy Holman was named as the beneficiary.

The terms of the Policy allowed Taylor Holman to change his beneficiary at any time while he was living.  Any change of beneficiary would take effect on the date Taylor Holman signed a change of beneficiary form.

By approximately May 2009, Taylor and Stacy Holman had separated due to marital conflicts.  Taylor Holman filed a Petition for Separate Maintenance in the Utah Fourth District on July 8, 2009.  The parties did not reach an agreement and the case was dismissed by stipulation on August 25, 2009.  On July 29, 2009, Stacy Holman filed for divorce in the Utah Fourth District.  Taylor Holman, however, died in January 2010—before the divorce proceedings were completed.

---

[4] Docket No. 77.

[5] Docket No. 57.

[6] Docket No. 74.

During the pendency of the divorce, Taylor Holman met with NYL agent Michael Reese to change the beneficiary of the Policy.  On September 29, 2009, in compliance with the relevant Policy terms, Taylor Holman changed the beneficiary of the Policy to his brother, Daryl Holman.

After Taylor Holman passed away on January 4, 2010, NYL agent Michael Reese notified Daryl Holman that he was the beneficiary under the Policy and assisted him in completing the claim form, which form was delivered along with the death certificate to Reese between January 15th and January 22nd, 2010.  Reese then sent this form to NYL's claim department.  On or about February 16, 2010, Stacy Holman sent a letter to NYL asserting a right to any benefit under the Policy.

The present action was removed to this Court on May 26, 2010.  In his Complaint, Daryl Holman brings claims against NYL for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty.[7]  In its Answer and Counterclaim, NYL sought to interplead the Policy benefit.[8]  Daryl Holman then filed a crossclaim against Stacy Holman for intentional interference with a contractual relationship.[9]  Stacy Holman counterclaimed against Daryl Holman, seeking a declaratory judgment that the Policy is marital property subject to equitable distribution, an establishment of a constructive trust, and a declaratory judgment that Taylor Holman was incompetent to change his beneficiaries.[10]

NYL filed a Motion to Deposit Funds.  Shortly thereafter, Daryl Holman filed his Motion for Summary Judgment, seeking an entry of summary judgment in his favor on Stacy Holman's

---

[7] Docket No. 1 Ex. 3.

[8] *See* Docket Nos. 3, 4.

[9] Docket No. 9.

[10] Docket No. 48.

counterclaims and NYL's claim for interpleader.  On May 17, 2011, this Court held that Stacy Holman was not entitled to any of the benefits under the Policy.[11]  In light of that decision, the Court also denied as moot NYL's Motion to Deposit Funds for Interpleader.  The remaining issues on the crossclaim between Daryl Holman and Stacy Holman were resolved through settlement, and the crossclaim was dismissed on September 8, 2011.[12]

On May 19, 2011, Daryl Holman filed a Motion for Entry of Judgment.  In that Motion, Daryl Holman argued that the Court's May 17, 2011, decision "establishes NYL's liability to pay the $1,292,233.00 life insurance policy benefit to Plaintiff," plus interest that has accrued on that amount.[13]  The next day, NYL and Nylink filed a joint Motion for Summary Judgment on Daryl Holman's claims against them.[14]  In response to that Motion, Daryl Holman filed a Motion for Extension of Time to Complete Discovery and for Extension of Time to File Response/Reply.[15] NYL and Nylink then filed a Motion for Protective Order, arguing that certain documents that Plaintiff has requested in his Extension of Time to Complete Discovery "are not relevant to any claim or defense in this lawsuit."[16]

NYL filed a Motion to Reconsider, requesting that the Court allow NYL to deposit the funds for interpleader, as Stacy Holman could have still appealed her case, leading to potential

---

[11] Docket No. 54.

[12] Docket No. 105.

[13] Docket No. 55, at 2-3.

[14] Docket No. 57.

[15] Docket No. 62.

[16] Docket No. 74, at 3.

liability by NYL for funds it had already disbursed.[17]  Plaintiff filed a Motion for Summary

Judgment on both his breach of contract and breach of the covenant of good faith and fair

dealing claims against both NYL and Nylink.[18]  Finally, NYL filed a Motion to Strike as

Untimely Exhibits Q and R Attached to Plaintiff's Reply Memorandum in Support of Motion for

Summary Judgment.

      Recent actions taken by the parties are relevant to the determination of the Motions

before this Court.  On August 3, 2011, Plaintiff sent NYL a letter and two releases by Stacy

Holman.  These releases were between 1) Stacy Holman and Daryl Holman, and 2) Stacy

Holman and NYL.[19]  On September 15, 2011, Plaintiff filed his Motion for Summary Judgment,

which NYL argues was where it first received notice "of Plaintiff's claim to be immediately

entitled to the Policy benefit in light of Stacy Holman's release."[20]  Notwithstanding its

outstanding concerns with paying the Policy benefit immediately, which were set forth both in a

letter and in NYL's Opposition to Plaintiff's Motion for Summary Judgment,[21] NYL paid

---

[17] Docket No. 77, at 2.

[18] Docket No. 106, at 2.

[19] Docket No. 107 Ex. H.

[20] Docket No. 109, at 22.

[21] *Id.* at 23.  NYL's concerns were:

> First, because Plaintiff had argued that New York Life must
> deposit funds in order to qualify for reimbursement of its litigation
> expenses—even while simultaneously opposing New York Life's
> efforts to do so—New York Life had a legitimate interest in first
> depositing the funds with the Court.  Second, . . . even after Stacy
> Holman's release, certain portions of the funds remained in dispute
> . . . .  Third, New York Life was uncertain what effect Stacy
> Holman's release had in light of the pending litigation between the
> parties, and Plaintiff never expressly demanded immediate
> payment.  *Id.*

Plaintiff $1,146,729.86 on October 7, 2011, and $226,431.78 on October 21, 2011.[22]  NYL

argues that this represents "the Policy benefit, plus 3.5 percent interest on the entire benefit from

the date of death."[23]

### III. SUMMARY JUDGMENT

Defendants filed a Motion for Summary Judgment on Daryl Holman's claims, for

Attorney Fees and Costs from Policy Funds, and for Dismissal from this Lawsuit on May 20,

2011.  On July 1, 2011, Plaintiff filed an Opposition to this Motion, along with a Rule 56(d)

Motion to file an Amended Opposition after conducting additional discovery.  On September 15,

2011, Plaintiff filed a Motion for Summary Judgment against both Defendants.

A.      RULE 56(d) MOTION

On May 25, 2011, Plaintiff filed a Motion for Enlargement of Time to Complete Fact

Discovery and to File an Opposition to NYL's Motion for Summary Judgment.  On July 1, 2011,

Plaintiff filed a Memorandum in Opposition to NYL's Motion for Summary Judgment and a

Rule 56(d) Motion for Enlargement of Time to File an Amended Opposition to NYL's same

Motion for Summary Judgment.  In this Motion, Plaintiff argued that "he should be permitted to

complete pending discovery, and resolve outstanding discovery disputes with NYL, prior to

having to file an opposition to NYL's Motion for Summary Judgment."[24]  As the deadline for

fact discovery has already passed, the Court would need to reopen fact discovery to grant

Plaintiff's Motion.

---

[22] *Id.* at 24.

[23] *Id.*

[24] Docket No. 83, at 3.

i.      *Legal standard*

Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order.

Under Tenth Circuit case law, this affidavit must "explain why facts precluding summary judgment cannot be presented,"[25] which "includes identifying (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment."[26]

ii.     *Application*

In the case at hand, Plaintiff has provided an affidavit from his attorney, Robert Tateoka, which states that Plaintiff is unable to present facts essential to his Opposition to NYL's Motion.[27]  Many of the assertions in the affidavit do not satisfy the Tenth Circuit factors; for example, Plaintiff states that NYL's 30(b)(6) deposition "is tailored to encompass matters relevant to all of Plaintiff's Claims against NYL" and that "[i]t is certain that relevant facts will be uncovered during the deposition, which are not otherwise presently available to Plaintiff, and which pertain to each of Plaintiff's claims."[28]  These assertions fail to identify "the probable

---

[25] *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992).

[26] *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Comm. for First Amendment*, 962 F.2d at 1522).

[27] Docket No. 83 Ex. B, at 3.

[28] *Id.*

facts not available," let alone why they cannot be presented currently and what steps have been taken to obtain these facts.

Plaintiff also has some language in his affidavit that may meet at least some of the Tenth Circuit standards.  Specifically, Plaintiff has argued that, through the Rule 30(b)(6) deposition of NYL, "Plaintiff will be able to cross examine NYL's witness on the question of when and how the completed claim form was actually received by NYL," "verify what steps NYL took, and on what dates, to determine whether Plaintiff was ever a suspect in the death of the Insured" and "evaluate what steps NYL took to investigate the factual and legal basis of Stacy Holman's adverse claim."[29]  While these statements do discuss issues that may be relevant, they do not identify any probable facts that are not available.  Plaintiff also fails to detail what steps have been taken to obtain these facts and how additional time will enable Plaintiff to obtain those facts.  These factors weigh against reopening discovery.

Furthermore, as discovery has already closed, the Court would need to reopen fact discovery to grant Plaintiff's Motion.  Under Tenth Circuit case law, factors to consider when determining whether discovery should be reopened include:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.[30]

The Court will now apply the above factors to this case.  With respect to the first factor, trial would need to be delayed substantially if the Court were to reopen discovery.  Turning to the second and third factors, the request was opposed, and NYL argues that it would be

---

[29] *Id.* at 4-5.

[30] *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

prejudiced, as "Plaintiff did not allege any specific deficiencies [with discovery] until May 18th" and "never offered to amend the scheduling order until May 19th," almost two months after discovery had already closed.[31]   Therefore, the first three factors all weigh against reopening discovery.

With respect to the fourth factor, it appears that Plaintiff was not diligent in obtaining discovery within the guidelines established by the Court.  As stated above, Plaintiff did not offer to amend the scheduling order until almost two months after discovery had already closed.[32] Plaintiff alleges Plaintiff's counsel did propose a discovery extension "during the same phone conversation where NYL proposed an extension applicable to all parties."[33]  Plaintiff alleges that he offered a bilateral extension between NYL and Plaintiff, to the exclusion of Stacy Holman. However, counsel for NYL states that he recalls the phone conversation differently, and that he "did not reject an offer for a bilateral agreement," "but would not consent to a unilateral extension for Plaintiff."[34]  In any case, Plaintiff would not agree to NYL's proposed extension, which would have modified the scheduling order for all parties and would be the usual means for dealing with an approaching discovery deadline.[35]

Also with respect to the fourth factor, while Plaintiff faults Defendants for producing many of the documents after the discovery deadline,[36] it appears that this was due to Plaintiff's

---

[31] Docket No. 73, at 10.

[32] *Id.*

[33] Docket No. 80, at 5.

[34] Docket No. 90, at 3.

[35] Docket No. 80, at 5; Docket No. 90, at 2-3.

[36] *See* Docket No. 63, at 2.

failure to "return an executed copy of the stipulated protective order until three days after the deadline—on March 28th."[37]  This is despite the fact that NYL had informed Plaintiff of the need for a protective order in December, 2010, and had sent a draft stipulated order on January 7, 2011.

With respect to deposition testimony, Plaintiff alleges that "NYL did not (and has yet to) make its Rule 30(b)(6) witness available for deposition prior to the expiration of fact discovery."[38]  However, Defendants point out, and Plaintiff has not denied, that "[o]n March 18th, Plaintiff's counsel noticed, without scheduling beforehand, the deposition of New York Life's representatives to be taken in Utah only four business days later on March 24th," the day before the close of fact discovery.[39]  On his own accord, "Plaintiff then cancelled the deposition after receiving notice that Stacy Holman's counsel was not available."[40]   In response to these concerns, Plaintiff simply states that "one of the primary reasons that discovery issues could not be resolved between Plaintiff and NYL was due to the time and resources expended in connection with Plaintiff's motion for summary judgment" on the issues between Plaintiff and Stacy Holman.[41]  As for Plaintiff's failure to agree to an extension of the discovery deadline, point out deficiencies in discovery, or file a Motion to reopen discovery until discovery had been closed for almost two months, Plaintiff simply states that "[t]he task of resolving the discovery

---

[37] Docket No. 73, at 12.

[38] Docket No. 62, at 2.

[39] Docket No. 73, at 13.

[40] *Id.* at 14.

[41] Docket No. 80, at 2.

dispute and completing fact discovery became impossible under the time constraints."[42]  This factor again weighs against reopening fact discovery.

With respect to the fifth factor, Defendants argue that Plaintiff not only could have foreseen the need for the requested discovery, but that he did foresee it.[43]  Plaintiff admits that "[o]n February 22, 2011, [he] communicated to NYL that [he] would likely have to conduct further fact discovery after the March 25, 2011 deadline."[44]  Plaintiff also admits that he foresaw the need to depose NYL's Rule 30(b)(6) witnesses, and that "NYL expressed its willingness to extend discovery for all parties" to accomplish this, but that Plaintiff "did not stipulate to a discovery extension for Stacy Holman because she never initiated any formal discovery."[45]  Instead, as discussed above, Plaintiff waited until after the Court had already granted summary judgment against Stacy Holman before he began discussing amending the scheduling order.  Defendants argue that "Plaintiff should not be permitted to manipulate the discovery cutoff by turning it on against an opponent from whom he wishes to avoid discovery and then turning it off against an opponent from whom he seeks discovery."[46]  Like the above factors, this weighs against the reopening of discovery.

Finally, with respect to the sixth factor, Defendants argue that the requested discovery will not lead to relevant evidence.  Plaintiff specifically has sought information and documents relating to "(1) other policies on Taylor Holman's life; (2) the rate used to calculate the duration

---

[42] *Id.*

[43] Docket No. 73, at 15.

[44] Docket No. 63, at 3.

[45] *Id.*

[46] Docket No. 73, at 16.

of Taylor Holman's extended term insurance; and (3) insurance that Taylor Holman 'could have purchased,' but did not purchase, with the net cash value of the policy upon its lapse."[47]   NYL argues that they should be prevented from conducting this discovery because these issues "are not relevant to any claim or defense in this lawsuit" and therefore fall outside the scope of discovery, as set forth in Fed. R. Civ. P. 26(b)(1).[48]   Defendants allege that either Plaintiff or Plaintiff's counsel are using discovery "as a 'fishing expedition' to allege future, speculative claims, including class-action claims against New York Life."[49]

The Court concludes that information relating to other policies Taylor Holman may have held, the rate used to calculate the duration of his insurance, and the insurance that he could have purchased, but did not purchase, are irrelevant to any claim that Plaintiff has brought in the current action, or indeed, would have standing to bring.  Although Plaintiff, as beneficiary, has an interest in the contract and Defendants' behavior relative to that contract, the Court does not see how other contracts to which Plaintiff is not a beneficiary and other policies that Taylor Holman could have purchased, but chose not to purchase, are relevant to any claim in the present action.  Therefore, this factor weighs heavily against reopening discovery.

As all of these factors weigh against reopening discovery, the Court will deny Plaintiff's Motion for an Enlargement of Time to Complete Fact Discovery.  Furthermore, as discussed previously, the Court finds that Plaintiff could have easily taken steps to obtain the requested discovery previously.  The Court will therefore deny Plaintiff's Rule 56(d) Motion as well.

---

[47] Docket No. 74, at 3.

[48] *Id.*

[49] Docket No. 73, at 17.

B.      CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff argues that he is entitled to summary judgment on his claims that 1) NYL

breached the Policy contract as a matter of law[50] and 2) that NYL has breached and continues to

breach the covenant of good faith and fair dealing.[51]  Defendants have also moved for summary

judgment on these claims, as well as on Plaintiff's claim for breach of fiduciary duty.  Both

parties also argue that they are entitled to attorneys' fees.

         i.      *Legal standard*

Summary judgment is proper if the moving party can demonstrate that there is no genuine

dispute of material fact and it is entitled to judgment as a matter of law.[52]  In considering

whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury

could return a verdict for the nonmoving party in the face of all the evidence presented.[53]  The

Court is required to construe all facts and reasonable inferences in the light most favorable to the

nonmoving party.[54]  In opposing a motion for summary judgment, "[t]he nonmoving party 'may

not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment."[55]

---

[50] Docket No. 107, at 8, 23-24.

[51] *Id.* at 8-23.

[52] *See* Fed. R. Civ. P. 56(a).

[53] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[54] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[55] *Baccus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Anderson*, 477 U.S. at 248).

*ii.     Application*

    *a.     Breach of fiduciary duty*

Defendants argue that Plaintiff's claim for breach of fiduciary duty fails as a matter of law, as insurers do not owe a fiduciary duty to their insured.[56]  Under Utah law, "in a first-party relationship between an insurer and its insured, the duties and obligations of the parties are contractual rather than fiduciary.  Without more, a breach of those implied or express duties can give rise only to a cause of action in contract, not one in tort."[57]

Plaintiff does not dispute that this is the usual case, instead arguing that insurers do owe fiduciary duties to third-party policy beneficiaries, and that duty arises in this case from the Policy's duty to defend clause.[58]  Plaintiff argues that this clause combines with a clause stating that "[p]ayments we make under this policy are, to the extent the law permits, exempt from the claims, attachment, or levies of any creditors" to assert that Defendants had a duty to defend Plaintiff against claims by creditors.[59]  Plaintiff then alleges that "Stacy Holman postured herself as a creditor of Plaintiff, and thus NYL should have a fiduciary duty, arising from the contract, to defend Plaintiff's interest as the designated Policy beneficiary."[60]

Stacy Holman's claim to the policy funds was in a large part premised on her argument that Taylor Holman was not legally competent to change the Policy beneficiary.[61]  Stacy Holman

---

[56] Docket No. 58, at 17.

[57] *Beck v. Farmers Ins. Exch.*, 701 F.2d 795, 800 (Utah 1985).

[58] Docket No. 83, at 32-33.

[59] *Id.* at 33.

[60] *Id.*

[61] *See* Docket No. 54, at 6.

was therefore claiming to be the rightful beneficiary under the Policy, not creditor of Plaintiff.
Plaintiff's argument regarding Defendants' duty to defend against creditors is therefore
inapplicable, and the Court will grant Defendants' Motion for Summary Judgment against
Plaintiff on this claim.

> b.      *Breach of contract*

Plaintiff argues that he is entitled to summary judgment against Defendants on his breach
of contract claim because Defendants "failed to promptly pay Daryl Holman his Policy benefit
within 15 days after the investigation of the claim was completed."[62]  The Policy states: "A
claim for the life insurance proceeds must be made in writing as soon as reasonably possible to
our Service Office or any other location that we indicate to you in writing."[63]  From the time of
receipt, NYL then has 15 days to either settle the claim or notify the beneficiary that "additional
information or an investigation is needed."[64]

In this case, Plaintiff stated in a written correction to his deposition that, with respect to
when the death certificate and claim form were delivered to Michael Reese, "I am not certain of
the date, but I know I delivered everything including the death certificate to Michael Reese
sometime between January 15 and January 22."[65]  Reese recalls that Plaintiff delivered these
documents to him shortly before Reese overnighted them to NYL's claims department on
January 20, 2010.[66]  Based on this and other testimony, NYL's claims department received

---

[62] Docket No. 107, at 23-24.

[63] Docket No. 61 Ex. 1, at 11.

[64] *Id.*

[65] Docket No. 83 Ex. C, at 20:6.

[66] Docket No. 109, 13-14.

Plaintiff's claim form and a copy of the death certificate on January 21, 2010.[67]  On February 5,

2010, fifteen days after receiving the required documentation, Michael Reese sent an email to

Plaintiff letting him know that additional investigation would be required on his claim.[68]

As this complies with the Policy and Plaintiff has not provided evidence disputing these

facts, NYL did not breach the contract by failing to notify Plaintiff within fifteen days.  Plaintiff

argues that he was not aware that giving the documents to Reese did not satisfy the terms of the

contract.[69]  However, this does not alter the terms of the contract between Taylor Holman and

Defendants.

Plaintiff also argues that the investigation came to a close at the very latest "when the

Court issue[d] its May 17, 2011 Memorandum Decision and Order."[70]  However, Plaintiff has

not directed the Court to language in the Policy that requires Defendants to provide payment

within a set amount of time following a determination that a claim will require additional

investigation.  Furthermore, while the Court's May 17, 2011, Order did grant summary judgment

for Daryl Holman against Stacy Holman's claims, Stacy Holman did have a right to appeal those

claims and notified Defendants that she intended to do so.[71]  As this was an interlocutory order,

and was not therefore final or enforceable, Stacy Holman would have to wait until the remaining

claims were resolved to appeal.  Therefore, the Court finds that the parties were still disputing

---

[67] *Id.* at 14.

[68] Docket No. 58 Ex. 3 ¶ 14.

[69] Docket No. 83, at 9.

[70] Docket No. 107, at 24.

[71] Docket No. 109, at 44.

16

their rights to the policy benefit,[72] and the Court will grant summary judgment for Defendants and against Plaintiff on this point as well.

           *c.*      *Breach of the covenant of good faith and fair dealing*

Plaintiff has also alleged that Defendants breached the covenant of good faith and fair dealing by failing "to conduct a prompt, thorough, and fair investigation of Daryl Homan's claim and Stacy Holman's adverse claim" and by failing "to comply with the notice and investigation duties pursuant to the administrative rules under the Utah Insurance Code."[73]  Plaintiff argues that Defendants have a duty to in good faith "diligently investigate the facts to enable it to determine whether a claim is valid," "fairly evaluate the claim," and "thereafter act promptly and reasonably in rejecting or settling the claim."[74]  In sum, Plaintiff argues that NYL breached the covenant of good faith and fair dealing by not paying Plaintiff earlier.

Plaintiff first argues that the issues were simple, and that if NYL's investigation had been more thorough, NYL would have resolved the competing claims in favor of Plaintiff.[75]  Plaintiff next argues that NYL acted in bad faith when it did not pay Plaintiff the policy benefit after the Court granted summary judgment against Stacy Holman's claims.[76]  Furthermore, Plaintiff alleges that NYL's "refusal" to pay Plaintiff the benefit after Plaintiff sent NYL Stacy Holman's release constituted bad faith.  Finally, although admitting that the statute does not create a private right of action, Plaintiff argues that NYL "failed to satisfy its obligations under Utah Admin.

---

[72] *Id.*

[73] Docket No. 107, at 8-9.

[74] *Id.* at 9 (citing *Beck*, 701 P.2d at 801).

[75] *Id.* at 10-13.

[76] *Id.* at 13-15.

Code § 590-191-4(8)" to either pay or notify Plaintiff within 15 days of receipt of the beneficiaries proof of loss.[77]

Defendants note that Plaintiff has not cited a single case where an insurer's attempt to deposit funds in interpleader has been found to violate the covenant of good faith and fair dealing.[78]  Defendants also argue that Plaintiff's claim to the policy benefit was fairly debatable once Stacy Holman notified NYL of her adverse claim,[79] and that the Court's Order granting summary judgment against Stacy Holman's claims did not remove this defense.[80]  Furthermore, Defendants cite to their (ultimately successful) efforts to pay Plaintiff after Stacy Holman waived her right to appeal as evidence of NYL's good faith and as a direct counter to Plaintiff's statement that they still refused to pay.[81]  Defendants also argue that they are not liable for acting in bad faith under Utah Admin. Code § 590-191-4 because: 1) it does not create a private right of action; 2) NYL contacted Plaintiff within 15 days; and 3) NYL responded to Plaintiff's communications.[82]  Finally, NYL argues that Plaintiff has not made a valid claim for damages because NYL already paid Plaintiff the policy benefit plus 3.5% interest, because NYL did not act in bad faith and therefore cannot be held liable for attorneys' fees, and because Plaintiff is

---

[77] *Id.* at 17-18.

[78] Docket No. 109, at 4.

[79] *Id.* at 27-34.

[80] *Id.* at 31-34.

[81] *Id.* at 38-41.

[82] *Id.* at 41-43.

ineligible for punitive damages because he has pointed to no conduct that justifies punitive damages and, more importantly, because his claims are in contract only.[83]

From a review of the record, it is clear that NYL has not acted in bad faith.  Any delay in processing the policy benefit falls under the "fairly debatable" defense, which states:

> If the evidence presented creates a factual issue as to the claim's validity, there exists a debatable reason for denial, thereby legitimizing the denial of the claim, and eliminating the bad faith claim.  When a claim is fairly debatable, the insurer is entitled to debate it, whether the debate concerns a matter of fact or law.[84]

In this case, the ongoing lawsuit, with a subsequent right to appeal by Stacy Holman and pending motions by both parties, including a motion relating to interpleader, make the claim "fairly debatable" and eliminate the bad faith claim.  The Court will also grant summary judgment against Plaintiff's claim under Utah Admin. Code § 590-191-4, as 1) Defendants did contact Plaintiff within 15 days, as discussed previously, and 2) the statute does not create a private right of action.

### d.    *Damages and attorneys' fees*

Both parties have moved for attorneys' fees in their Motions for Summary Judgment.  Plaintiff argues that the damages he suffered by Defendants' actions include punitive damages, attorneys' fees, and the Policy benefit plus interest; the Court will examine each in turn.

First, Plaintiff's claim for punitive damages is invalid because Plaintiff has not alleged any grounds for punitive damages in this case.  Next, with respect to attorneys' fees, any fees would be a result of the lawsuit, which, as the claims were fairly debatable, cannot be attributed to any bad faith by Defendants.  Finally, with respect to the Policy benefit plus interest, the Court finds that this is not an appropriate ground to support any of Plaintiff's claims for damages.

---

[83] *Id.* at 46.

[84] *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct. App. 1984).

On this point, the Court first notes that the policy benefit would not be a damage resulting from any breach of the covenant of good faith and fair dealing; it is simply what is provided for under the insurance policy itself.  More importantly, the policy benefit, plus a 3.5% rate, has already been paid by Defendants.  While Plaintiff alleges that the applicable interest rate should be 10%,[85] this is unsupported.  Plaintiff argues that "[t]here is no contractual provision setting forth the applicable rate of interest" and that it should therefore be "10% per annum" under Utah Code Ann. Section 15-1-1(2).[86]  This statute states: "Unless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum."[87]

NYL argues that Section 15-1-1(2) is inapplicable because: (1) "the subject matter of the Policy contract is life insurance, not a loan or forbearance"[88] and (2) "the Policy contract has specified the applicable rate of interest."[89]  How the interest rate is determined is specified in the Policy Contract, where it states: "We [speaking of NYL] will pay the life insurance proceeds in accordance with the policy proceeds option chosen.  These proceeds bear interest compounded each year from the Insured's death to the death of payment.  We set the interest rate each year."[90]

Defendants have provided a Declaration from the Vice President of New York Life Insurance Company, which states, consistent with the Policy, that "Unless otherwise specified by

---

[85] Docket No. 107, at 25.

[86] Docket No. 55, at 2.

[87] Utah Code Ann. § 15-1-1(2) (2011).

[88] Docket No. 66, at 7.

[89] *Id.*

[90] Docket No. 36 Ex. B, at 11.

law, New York Life determines the interest rate it will pay on death claims each year," and "[o]n

the claim at issue New York Life is crediting interest from January 1, 2010, to June 24, 2011, at

a rate of 3.5%."[91]  The Court therefore finds that the Policy benefit plus a 3.5% interest rate that

has already been paid by Defendants satisfies Plaintiff's entire claim for damages in this action.

 With respect to Defendants' request for attorneys' fees, the Tenth Circuit has stated that,

although such an award is discretionary,[92] "fees are normally awarded to an interpleader plaintiff

who (1) is disinterested (i.e., does not itself claim entitlement to any of the interpleader fund); (2)

concedes this liability in full; (3) deposits the disputed fund in court; and (4) seeks discharge, and

who is [not] in some way culpable as regards the subject matter of the interpleader

proceeding."[93]

 The Court finds such an award inappropriate in this case.  First, Defendants did not file

this lawsuit with the Court, only responding with a counterclaim for interpleader once the suit

was already filed.  Furthermore, Defendants did not seek to interplead the funds with the Court

until March 9, 2011, over nine months after this suit was filed.  Finally, as evidenced by this

opinion, there were a number of claims filed by Plaintiff against Defendants directly and

Defendants were not merely before the Court as a disinterested interpleader.

 Therefore, for the reasons set forth above, the Court will deny Plaintiff's Motion for

Summary Judgment and grant Defendants' Motion for Summary Judgment on all claims except

Defendants' request for attorneys' fees.

---

[91] Docket No. 78 Ex. 2, at 2.

[92] *Transamerica Premier Ins. Co. v. Growney*, 70 F.3d 123, 1995 WL 675368, at *2 (10th Cir. 1995) (unpublished) (alteration in original) (internal quotation marks and citations omitted).

[93] *Id.* at *1.

IV. MOTION TO STRIKE

On November 22, 2011, Defendants filed a Motion to Strike as Untimely Exhibits Q and R, which were attached to Plaintiff's Reply Memorandum in support of Plaintiff's Motion for Summary Judgment.  This Motion is moot in light of the Court's granting summary judgment against Plaintiff's claims.

V. MOTION TO WITHDRAW

NYL, as interpleader, filed a Motion to Reconsider NYL's Motion to Deposit Funds for Interpleader.  NYL argued that its Motion to Deposit Funds was not made moot by the Court's May 17, 2011, Order granting Summary Judgment against Stacy Holman on her claims against Daryl Holman.  The Court had denied NYL's Motion as moot at that time, not addressing the Motion on its merits.

After this Motion was fully briefed, Stacy Holman released all pending claims against both Plaintiff and NYL.  In light of this release, NYL paid Plaintiff $1,373,161.64, covering the funds in dispute "plus 3.5% interest on the entire benefit from the date of death through . . . . October 21, 2011."[94]  Defendants then filed a Motion to Withdraw their Motion to Set Aside, which the Court will grant.

VI. MOTION FOR A PROTECTIVE ORDER

On June 13, 2011, Defendants filed a Motion for Protective Order.  In light of the Court's summary judgment ruling and denial of Plaintiff's Motion for an Enlargement of Time to Complete Fact Discovery, Defendants' Motion for a Protective Order will be denied as moot.

---

[94] Docket No. 109, at 24.

## VII. MOTION FOR ENTRY OF JUDGMENT

Plaintiff also filed a Motion for Entry of Judgment on May 19, 2011. At the time, none of Plaintiff's claims against Defendants had been resolved. In light of the Court's summary judgment ruling against Plaintiff's claims, set forth above, Plaintiff's Motion for Entry of Judgment will be denied as moot.

## VIII. CONCLUSION

Based on the foregoing, it is therefore

ORDERED that Plaintiff's Rule 56(d) Motion and Motion for Enlargement of Completion of Discovery (Docket No. 62) is DENIED. It is further

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 106) is DENIED. It is further

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 57) is GRANTED IN PART and DENIED IN PART. It is further

ORDERED that Defendants' Motion to Withdraw (Docket No. 117) is GRANTED. It is further

ORDERED that Defendants' Motion to Strike (Docket No. 112) and Motion for a Protective Order (Docket No. 74) and Plaintiff's Motion for Entry of Judgment (Docket No. 55) are DENIED AS MOOT.

The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff on all of Plaintiff's claims and close this case forthwith.

DATED   January 26, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge